**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SEAN WELLS and UNITED PHYSICAL THERAPY ASSOCIATION,

Plaintiffs,

v. Case No.: 3:25-cv-919-WWB-SJH

ROBERT F. KENNEDY,

Defendant.
_________________________________/

**ORDER**

THIS CAUSE is before the Court on Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. 26), Plaintiffs' Response (Doc. 34), and Defendant's Reply (Doc. 39).[1] For the reasons set forth below, the Court will grant Defendant's Motion.

## I. BACKGROUND

In 1965, Congress established a comprehensive health insurance program for elderly individuals, commonly referred to as "Medicare." *See* Social Security Amendments of 1965, Pub. L. 89-97, 79 Stat. 286. As relevant here, Medicare "Part B" provides supplemental insurance to Medicare recipients, known as "beneficiaries," that covers certain physician and outpatient services. *See* 42 U.S.C. §§ 1395j–1395w-6. Whenever a physician or healthcare practitioner provides a service to a beneficiary under

[1] Plaintiffs' Response fails to comply with font requirements of this Court's January 12, 2021 Standing Order and Defendant's Reply fails to comply with the AI Certification Requirements of this Court's April 2, 2026 Standing Order. In the interests of justice, the Court will consider the filings. However, the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking of filings without notice or leave to refile.

Part B, federal law requires that those providers submit a claim for the service provided and prohibits them from charging above a certain "limiting charge." *Id.* §§ 1395w-4(g)(1)–(2), (4)(A)(i).

In 1997, Congress amended the Medicare program to allow certain medical professionals to "opt out" of Medicare and privately contract with beneficiaries. (Doc. 1, ¶¶ 22–23); 42 U.S.C. § 1395a(b). Specifically, the law allows "a physician or practitioner" to "enter[] into a private contract with a [M]edicare beneficiary for any item or service" under Part B and for which that physician or practitioner receives "no reimbursement" under Medicare. 42 U.S.C. § 1395a(b)(1)(A)–(B). For purposes of the Medicare "opt-out" provision, a "physician" specifically means (1) "a doctor of medicine or osteopathy," (2) "a doctor of dental surgery or of dental medicine," (3) "a doctor of podiatric medicine," (4) "a doctor of optometry," or (5) "a chiropractor." 42 U.S.C. § 1395x(r). A "practitioner" includes (1) "[a] physician assistant, nurse practitioner, or clinical nurse specialist," (2) [a] certified registered nurse anesthetist," (3) "[a] certified nurse-midwife," (4) "[a] clinical social worker," (5) "[a] clinical psychologist," (6) "[a] registered dietitian or nutrition professional," (7) "[a] marriage and family therapist," and (7) "[a] mental health counselor." 42 U.S.C. § 1395u(b)(18)(C); (Doc. 1, ¶ 25). Physical therapists are, therefore, implicitly excluded from the opt-out provision and thus barred from entering into private contracts with Medicare beneficiaries for covered services. (Doc. 1, ¶¶ 26–27).

Plaintiff United Physical Therapy Association ("**UPTA**") is a nonprofit association of licensed physical therapists that aims to "eliminate unnecessary barriers that prevent physical therapists from practicing their profession and serving patients." (Doc. 1, ¶¶ 19–20). Plaintiff Dr. Sean Wells, a licensed physical therapist in Florida and a member of

UPTA, provides home-based physical therapy primarily for elderly patients. (*Id.* ¶¶ 3, 17, 52). Although Wells and his four contracting physical therapists provide discounted care to patients in financial hardship, they do not accept Medicare or private insurance. (*Id.* ¶¶ 52, 57). His patients pay out-of-pocket, which empowers him to "avoid unnecessary administrative costs and offer individualized rates." (*Id.* ¶ 57). Wells alleges that Medicare's exclusion of physical therapists from its opt-out provision "deprives him of the ability to extend that same model of care to Medicare beneficiaries." (*Id.*).

As a result, Plaintiffs ask the Court to declare 42 U.S.C. § 1395a(b) unconstitutional because it impermissibly burdens their equal protection and due process rights under the Fifth Amendment, enjoin Defendants from enforcing the penalties for violating the opt-out provisions, and find that the exclusion exceeds Congress's powers under the Commerce Clause. (Doc. 1, ¶¶ 76–96).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "naked assertions devoid of further factual enhancement" are insufficient. *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A. Commerce Clause

Although most of the parties' briefing focuses on whether the statute offends Plaintiffs' rights under the Fifth Amendment, the Court will first address whether 42 U.S.C. § 1395a(b) is, as a prerequisite, a lawful use of Congress's power under the Commerce Clause.

"Every law enacted by Congress must be based on one or more of its constitutionally enumerated powers." *Nat'l Small Bus. United v. U.S. Dep't of the Treasury*, 161 F.4th 1323, 1328 (11th Cir. 2025). "One of those enumerated powers is the power '[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.'" *Id.* (quoting U.S. Const. art. I, § 8, cl. 3). Under Supreme Court precedent, the Commerce Clause empowers Congress to regulate: "(1) channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce."

*Id.* (citing *United States v. Lopez*, 514 U.S. 549, 558–59 (1995)). Plaintiffs argue that § 1395a(b) does not fall into any such category, (Doc. 1, ¶ 90), while Defendant argues the provision clearly falls into the "substantial effects" category.[2]

Typically, a law is only constitutional under the "substantial effects" test when the intrastate activity regulated "is economic in nature or where the statute contains a jurisdictional element linked to interstate commerce." *Id.* at 1328–29. "[F]or a law to be facially constitutional under the substantial effects test in the absence of a jurisdictional element, the law ordinarily" must be (1) "directed at some kind of commercial or economic activity" and (2) "Congress must have rationally concluded that the regulated activity in the aggregate substantially affects interstate commerce." *Id*. at 1329; *Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1272 (11th Cir. 2007) ("Our case law firmly establishes Congress'[s] power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." (quoting *Gonzalez v. Raich*, 545 U.S. 1, 17 (2005))).

Although this authority is broad, there are limits. For example, in *National Federation of Independent Business v. Sebelius*, the Supreme Court recognized the principle that Congress's power to "*regulate* commerce presupposes the existence of commercial activity to be regulated." 567 U.S. 519, 550 (2012). The Court applied this principle when confronting the constitutionality of the "individual mandate" in the Patient Protection and Affordable Care Act, which required "most Americans to maintain minimum

[2] The Court notes that at least one court has found that parts of this provision are justified as a lawful use of Congress's power under the Spending Clause. *United Seniors Ass'n v. Shalala*, 2 F. Supp. 2d 39, 42 (D.D.C. 1998). However, because neither party provides briefing to that end, the Court does not discuss it here.

essential health insurance coverage" or otherwise be subject to a "penalty." *Id.* at 539 (quotation omitted). The *Sebelius* Court held that the individual mandate could not be justified under the Commerce Clause because it did "not regulate existing commercial activity. It instead compels individuals to *become* active in commerce by purchasing a product, on the ground that their failure to do so affects interstate commerce." *Id.* at 552. It is now clear that Congress cannot "regulate commerce that does not exist by compelling its existence." *United States v. Parton*, 749 F.3d 1329, 1331 (11th Cir. 2014) (quotation omitted).

Defendant argues that it is well-established that Medicare affects commerce, and that the provision of medical services affects interstate commerce because healthcare professionals around the country "serve nonresident patients and receive reimbursement through Medicare payments." (Doc. 26 at 24 (quoting *United States v. Ogba*, 526 F.3d 214, 238 (5th Cir. 2008))). Defendant further argues that Congress could have rationally concluded that excluding physical therapists from Medicare's opt-out provisions would make physical therapy more widely available and affordable for elderly Americans, and therefore advance Medicare's objective that beneficiaries have broad access to cost-effective medical care. In Response, Plaintiffs argue that by prohibiting physical therapists from entering contracts with patients where Medicare plays no role in the transaction, § 1395a(b) impermissibly compels participation in a federal program like the individual mandate in the Affordable Care Act.

The Court agrees with Defendant that § 1395a(b) clearly regulates, not compels, a commercial activity. *See Ogba*, 526 F.3d at 238. In *Sebelius*, those subject to the individual mandate were given two choices to either purchase federally accepted health

insurance or pay a penalty. Both of those choices required citizens to engage in commercial activity. Here, the statute does no such thing. Physicians are not legally required to participate in the Medicare program. Indeed, Plaintiff Wells admits that he and his contractors do not accept Medicare or any private insurance. (Doc. 1, ¶ 57). But when physicians voluntarily choose to participate, they are subject to Medicare's reimbursement and price limiting regulations, unless they fall into the statutory category Plaintiffs now challenge. Importantly, this category *deregulates* Congress's previously exercised authority controlling the conduct of all sorts of healthcare professionals. *See* 42 U.S.C. § 1395a(b)(1) ("[N]othing in this subchapter shall prohibit a physician or practitioner from entering into a private contract with a [M]edicare beneficiary . . . .").

In fact, Plaintiffs do not truly challenge Congress's authority to regulate a whole host of medical professionals in the first place. Plaintiffs make clear that that their claims are "not an attack on Medicare" overall, "do not challenge reimbursement rules, eligibility requirements, or Congress's authority to regulate federal spending." (Doc. 34 at 3).[3] They simply appear to oppose the way Congress has deregulated by allowing some, but not all physicians, to privately contract with Medicare beneficiaries. (Doc. 1, ¶ 90). But courts are not a venue to "rewrite statutes" simply because a party questions the wisdom of Congress's policy determinations. *See Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1296 (11th Cir. 1999).

---

[3] At one point, Plaintiffs' Response argues that they are not even challenging "the opt-out framework as a whole." (Doc. 34 at 11). But that argument is incongruous with Plaintiffs' allegations that the "opt-out provisions" themselves "target inactivity." (Doc. 1, ¶ 91).

Furthermore, § 1395a(b) itself imposes requirements on private contracts that are quintessential regulations on existing commercial activity. For example, the contract must be in writing and signed by the Medicare beneficiary, must "clearly indicate" that the beneficiary waives Medicare coverage and assumes full responsibility for payment, and the contract must not be "entered into at a time when the [M]edicare beneficiary is facing an emergency or urgent health care situation." 42 U.S.C. § 1395a(b)(1)–(2). Plaintiffs do not challenge Congress's authority to impose those regulations. But to the extent Plaintiffs do challenge those regulations indirectly, (*see* Doc. 1, ¶ 95), they provide no argument or authority in support of their position.

Plaintiffs have also failed to allege that Congress did not have a rational basis for concluding that excluding physical therapists from § 1395a(b) would, in the aggregate, substantially affect interstate commerce. *See Raich*, 545 U.S. at 22 (holding that courts must not determine that a regulated activity "affect[s] interstate commerce in fact, but only whether a 'rational basis' exists for so concluding"). At most, Plaintiffs allege (1) that "[t]he relationship between medical providers and their patients . . . has historically been the prerogative of the states" and (2) that "there is no interstate market for local physical therapy services." (Doc. 1, ¶¶ 93, 95). Both allegations, however, are insufficient because the locality of commercial activity is only one part of this Court's analysis. *Raich*, 545 U.S. at 17. Congress may regulate intrastate activities when they are "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Kempthorne*, 477 F.3d at 1272 (quotation omitted). Congress could have believed that physical therapy is an essential part to Medicare's central aim of improving the health and quality of living of elderly Americans.

Further, Congress could have believed allowing physical therapists to opt out of Medicare would, in the aggregate, increase the cost of physical therapy and thereby decrease a beneficiary's access to a national market. Accordingly, the Court concludes that § 1395a(b) falls within Congress's power to enact and that Count III of Plaintiffs' Complaint must be dismissed.

**B. Equal Protection**

The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Although the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. Thus, if a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 n.4 (11th Cir. 2002) (quoting *Johnson v. Robison*, 415 U.S. 361, 364 n.4 (1974)).

"The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009) (citation omitted). "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends on the basis for the classification." *Id.* at 1306 (quotation omitted). "[C]lassifications that neither implicate fundamental rights nor proceed along suspect lines are subject to rational basis review." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1029 (11th Cir. 2020); *see also Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither

proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.”). Here, the parties agree that rational basis review applies because the statute neither burdens a fundamental right under Supreme Court precedent nor classifies based on some suspect class.

The Court’s analysis under the rational basis test is twofold. First, the Court must “identify[] a legitimate government purpose—a goal—which the enacting body *could* have been pursuing.” *Haves v. City of Mia.*, 52 F.3d 918, 921 (11th Cir. 1995). “The *actual* motivations of the enacting governmental body are entirely irrelevant.” *Id.*[4] Second, the Court “asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose.” *Id.* at 922. The proper inquiry addresses the “*existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body.” *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1547 (11th Cir. 1994). So long as the relationship between the statutory classification and its goal is “not so attenuated as to render the distinction arbitrary or irrational,” the challenged enactment will survive rational basis review. *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).

The Court may apply rational basis review even at the dismissal stage where a plaintiff challenges a legislative enactment that “neither targets a protected class nor implicates fundamental rights of the Fourteenth Amendment.” *Kentner v. City of Sanibel*, No. 2:11-cv-661-Orl, 2012 WL 12861154, at *10 (M.D. Fla. Aug. 21, 2012) (quoting

---

[4] Importantly, the “statue is presumed constitutional, and the burden is on the one attacking the law to negative every conceivable basis that might support it, even if that basis has no foundation in the record.” *Leib*, 558 F.3d at 1306.

*Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 806 (11th Cir. 2009)). This is particularly appropriate for an equal protection claim premised solely on a legislative act because "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.

Defendant argues that Congress had many legitimate governmental interests in enacting § 1395a(b), including promoting the health and welfare of elderly Americans. Defendant further argues that the exclusion of physical therapists from § 1395a(b) is rationally related to the promotion of public health because—among other reasons—it protects patient access to quality physical therapy services regardless of income and prevents any risk of fraud or abuse to vulnerable Medicare beneficiaries.

As already explained, the Court finds that Congress could have been pursuing a legitimate government purpose in excluding physical therapists from opting out of Medicare. Specifically, Congress could have sought to promote the public health and welfare of elderly Medicare beneficiaries by ensuring widespread access to quality-of-life care regardless of income. *See Shalala*, 2 F. Supp. 2d at 42 (D.D.C. 1998) (reasoning that "limiting the amount that Medicare beneficiaries pay for services" serves the general welfare). The Court also concludes that a rational basis exists for believing that excluding physical therapists from the opt-out provision would further public health and the general welfare of Medicare beneficiaries. When weighing the risks of including physical therapists, Congress could have believed that the particular services physical therapists provide are too important to risk allowing any physical therapist to prey upon the financial state of Medicare beneficiaries. Although Plaintiffs' Complaint alleges that there is no

evidence that physical therapists are "more prone to fraud than other providers who are permitted to opt out," (Doc. 1, ¶ 37), Congress "is not required to support its conclusions with empirical data as long as the assumptions it[] makes are logical." *Cash Inn of Dade, Inc. v. Metro Dade Cnty.*, 938 F.2d 1239, 1242 (11th Cir. 1991). Even if there were never an instance of fraud, Congress could have also believed that Medicare's protections of affordable healthcare would be best realized when physical therapists are required to adhere to its charge-limiting rule.

Plaintiffs nonetheless contend that none of Defendant's reasons are rational because those justifications contradict the allegations of the Complaint, which the Court must accept as true. Although it is true that the Court must accept all of Plaintiffs' allegations as true and construe them in a light most favorable to them, Plaintiffs bear the burden of plausibly alleging that Congress "could not have reasonably believed that the legislation would attain its aims." *Cash Inn of Dade, Inc.*, 938 F.2d at 1244. While Plaintiffs argue that Congress's decision to exclude physical therapists from § 1395a(b) actually "disrupts continuity of care, delays treatment, and contributes to a severe shortage of physical therapy services for Medicare-eligible patients, particularly in rural areas," (Doc. 34 at 10), those arguments simply critique "the wisdom, fairness, or logic" of Congress's policy choice. *Beach Commc'ns*, 508 U.S. at 313. It does not matter "whether the legislation will *in fact* accomplish its goals." *Cash Inn of Dade*, 938 F.2d at 1244. Rather, what matters at the motion to dismiss phase is whether Plaintiff has plausibly alleged that Congress could not have had *any* rational basis to conclude the legislation would accomplish its interests. Because there are "plausible reasons for Congress'[s] action," and Plaintiffs have failed to allege that no reasonable person could

have believed the statute was rationally related to Congress's objective, Plaintiffs' claim fails. *Beach Commc'ns*, 508 U.S. 313–14. Accordingly, Count I of the Complaint will also be dismissed.

**C. Due Process**

Finally, Plaintiffs claim that § 1395a(b) violates their substantive due process rights under the Fifth Amendment. They allege that "[p]hysical therapists have a right to practice their profession and enter into voluntary, private contracts with their patients" and that the exclusion of physical therapists from the Medicare opt-out provision "unreasonably interferes with this right, forcing them to either participate in Medicare on unfavorable terms or forfeit their ability to treat Medicare beneficiaries entirely." (Doc. 1, ¶¶ 85–86).

Plaintiffs' claimed right appears to invoke the long-abandoned "approach to constitutional decision-making typified by *Lochner v. New York*, 198 U.S. 45 (1905)." *Eknes-Tucker v. Governor of Ala.*, 114 F.4th 1241, 1245 (11th Cir. 2024). The Court is clearly without power to revive such a doctrine, nor should it. *Id.* ("The freewheeling judicial policymaking that marked discredited decisions like *Lochner* and *Roe v. Wade*, 410 U.S. 113 (1973), . . . is a feature, not a bug, of substantive due process. And it discredits the judiciary itself." (quotation omitted)). Therefore, Plaintiffs' substantive due process claims are subject only to rational basis review. *See Leib*, 558 F.3d at 1308. And, because § 1395a(b) "survived rational basis review for purposes of [Plaintiffs'] equal protection claim, it follows *a fortiori* that [the statute] survive[s] rational basis review here as well." *Id.*

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. 26) is **GRANTED**.

2. Plaintiff's Complaint (Doc. 1) is **DISMISSED with prejudice**.

3. The Clerk is directed to enter judgment accordingly, terminate all other pending motions, and close this case.

**DONE AND ORDERED** in Jacksonville, Florida on August 20, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record